**Helene M. PETROWSKI,**

v.

**Richard I. KILROY, et al.**

**Civ. A. No. 84–6175.**

United States District Court,
E.D. Pennsylvania.

May 17, 1985.

Elliot B. Platt, Philadelphia, Pa., for plaintiff.

Edward A. Gray, Liebert, Short, Fitz-Patrick & Lavin, Philadelphia, Pa., Joseph A. Yablonski, Yablonski, Both & Edelman, Washington, D.C., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Helen M. Petrowski, brought this action in the Court of Common Pleas of Philadelphia County against her former employers, the Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC) and its subsidiary, Conrail System Board of Adjustment No. 86 (System Board), and Richard I. Kilroy and John A. Lieb, the International President ·of BRAC and International Representative of BRAC, respectively. The plaintiff alleged that defendants had breached their express

and implied contracts of continued employment by discharging her without cause. The plaintiff also alleged that defendants breached their express contract, embodied in the BRAC Constitution, concerning the plaintiff's seniority rights and her right to notice and a hearing prior to being disciplined as a member of BRAC. In addition, the plaintiff alleged that defendants' conduct constituted wrongful discharge, libel, and intentional or negligent infliction of emotional distress under Pennsylvania law. Defendants removed this action to federal court on the ground that plaintiff's allegation of improper disciplinary action by a union was a claim founded upon the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq.* (1975).

Although plaintiff did not originally plead an action arising under the federal labor laws, plaintiff acquiesced in the removal. Plaintiff was then granted leave to amend her complaint to allege that defendants violated plaintiff's rights under sections 101, 102, and 609 of the LMRDA, 29 U.S.C. §§ 411, 412, 529.

Defendants have filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), for failure to state a claim for which relief can be granted. Plaintiff asserts, inter alia, that she has stated a claim under section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, as well as a claim under the LMRDA.

In considering defendants' motion to dismiss under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the plaintiff and deny the motion even if it appears on the face of the pleadings that recovery is very remote. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court will dismiss the complaint only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

Plaintiff alleges the following facts in support of her claims: In January 1977, the plaintiff was hired by BRAC and System Board to work at the offices of System Board. As a condition of her employment, the plaintiff was required to become a member of BRAC, which she did. The BRAC Constitution provided, inter alia, that the International President "shall have power to suspend, expel, or otherwise discipline a member, but only after serving such member with specific written charges stating the ground therefor, and affording the member reasonable time to prepare his defense and a full and fair hearing." In addition, plaintiff received a BRAC personnel policy statement which provided that "[e]mployees whose positions are abolished may, seniority and qualifications permitted, exercise their seniority rights over junior employees. Other employees affected may exercise their seniority in the same manner."

In 1981, plaintiff was promoted to the position of administrative assistant to the then General Chairman of System Board, Mr. Al Archual. In August of 1981, Mr. Archual became International Vice President of BRAC. From that point on, BRAC and System Board each contributed one-half of plaintiff's salary.

In September 1983, an investigation revealed that Mr. Archual was misusing union funds. BRAC and its president, Richard I. Kilroy, imposed a trusteeship on System Board. John A. Lieb served as trustee of System Board from September 7, 1983 until May 1984. Plaintiff had no knowledge of any illegal or improper activity by Mr. Archual and had not participated in any illegal or improper activity prior to September 1983, when the trusteeship was imposed. On September 7, Mr. Kilroy, the President of BRAC, told plaintiff to stay home from work until further notice. Although plaintiff continued to receive her salary and benefits, she was not permitted to visit her place of employment. Her personal belongings were delivered to her by the defendants. Plaintiff was forced to seek and obtain permission to visit the of-

fice of her dentist, which was in the same building as the offices of System Board.

On or about September 9, 1983, Mr. Kilroy and BRAC entered an agreement with Mr. Archual which provided that Mr. Archual would resign his positions with BRAC and System Board and forego any legal challenge to the imposition of the trusteeship over System Board. In return, Mr. Archual would receive retirement benefits as a former member and officer of BRAC and System Board, and BRAC and System Board would continue to employ the plaintiff. Mr. Archual resigned and subsequently pled guilty to embezzlement and income tax evasion in federal district court. Mr. Lieb, the trustee of System Board, terminated plaintiff's employment with BRAC and System Board, without explanation or hearing, effective December 9, 1983. All defendants authorized the action taken by Mr. Lieb with respect to plaintiff's termination. On December 9, 1983, the plaintiff claimed her seniority rights over other office employees, but, without explanation, defendants denied plaintiff the right to assert seniority. Mr. Kilroy and Mr. Lieb falsely accused plaintiff of involvement in the misconduct of Mr. Archual. In terminating plaintiff's employment, defendants intended to punish plaintiff for criminal activity in which they knew she had not participated, and for her association with Mr. Archual.

## I. NATIONAL LABOR RELATIONS ACT CLAIM

In Count IV of her complaint, plaintiff alleges that the defendants breached their express contract not to impose discipline upon plaintiff as a member of BRAC without notice of specific charges and a hearing. Plaintiff contends that the union constitution is a contract, and that she has a federal cause of action against defendants for breach of that contract under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1978).

In *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Local 334*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), the Supreme Court held that a suit brought by a local union against its parent international union alleging a violation of the international's constitution fell within the federal district courts' jurisdiction under section 301 of the LMRA, and that there was no requirement that a significant impact on labor-management relations be alleged. The Court characterized the international union's constitution as a contract between labor organizations. 452 U.S. at 620–21, 101 S.Ct. at 2549 (citing *Coronado Coal Co. v. United Mine Workers of America*, 268 U.S. 295, 304, 45 S.Ct. 551, 554, 69 L.Ed. 963 (1925) (a union constitution is a "fundamental agreement of association")). While the *Journeyman* Court acknowledged that the LMRA was not intended to interfere with the internal governance of union membership, the Court found "an obvious and important difference" between such interference and "enforcement by the federal courts of freely entered into agreements between separate labor organizations." 452 U.S. at 626, 101 S.Ct. at 2552. The *Journeymen* Court expressly declined to decide whether individual union members have a cause of action under section 301 of the LMRA against a labor organization alleging a breach of the union constitution. *See* 452 U.S. at 627, n. 16, 101 S.Ct. at 2553, n. 16 (citations omitted).

The federal courts are not in agreement as to whether *Journeymen* should be expanded to authorize a section 301 cause of action on the part of individual union members against a union alleging breach of the

union's constitution. *See Rutledge v. Aluminum, Brick and Clay Workers International Union,* 737 F.2d 965, 969–70 (11th Cir.1984) (collecting cases). Apparently, the key question is what implication should be drawn from *Journeymen* in light of the Supreme Court's prior decision in *Smith v. Evening News Association,* 371 U.S. 195, 85 S.Ct. 267, 9 L.Ed.2d 246 (1962), holding that an individual union member had a section 301 cause of action against his employer for breach of the collective bargaining agreement. In effect, the *Smith* Court said that as long as there was a "contract" between an employer and a labor organization or between labor organizations, a "suit" under section 301 could be maintained by a nonsignatory to the contract. *See* 371 U.S. at 200, 83 S.Ct. at 270 (rejecting argument that the word "between" in section 301 refers to "suits" rather than "contracts" and that the only suit authorized by section 301 to enforce the collective bargaining agreement would be one between the labor organization and the employer).

Some courts have reasoned from *Journeymen* that a union constitution is a contract within section 301, and from *Smith* that section 301 permits enforcement by nonsignatories to the contract, and have concluded that a union member is entitled to sue a union under section 301 to enforce the union constitution. *E.g., Doby v. Safeway Stores, Inc.,* 523 F.Supp. 1162, 1166 (E.D.Va.1981) (citing *Journeymen* and *Smith*); *E.C. Alford v. National Post Office Mail Handlers,* 576 F.Supp. 278, 284–86 (E.D.Mo.1983) (adopting *Doby's* approach but disallowing suit based on violation of *local* union's constitution). *See also Kinney v. International Brotherhood of Electrical Workers,* 669 F.2d 1222, 1229 (9th Cir.1981) (*Journeymen* does not change previous Ninth Circuit position that individual union member may sue union on basis of union constitution under section 301); *Alexander v. International Union of Operating Engineers,* 624 F.2d 1235, 1238 (5th Cir.1980) (collecting *Journeymen* cases); *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1247 (2d Cir.1970), *cert. denied sub*

*nom United Steelworkers of America v. Abrams,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1271) (*Smith* authorizes suit by individual members vs. union).

Other courts, however, have not understood *Smith* and *Journeymen* to authorize suits by individual union members against unions for breach of the union constitution. *See Frenza v. Sheet Metal Workers' International Association,* 567 F.Supp. 580, 584–85 (E.D.Mich.1983) (Sixth Circuit rule that individual union members cannot maintain an action for breach of a union constitution was not changed by *Journeymen*) (citing *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961 (6th Cir.1976). In *Trail,* the Sixth Circuit held that *Smith's* authorization of section 301 suits by individual union members should be limited to the enforcement of *collective bargaining agreements:*

> *Smith v. Evening News Association* dealt with an action by individual union members against their employer based on the collective bargaining agreement. Over the years there has been the judicial creation of a Federal common law in the area of collective bargaining. This was expressly recognized in *Textile Workers Union v. Lincoln Mills of Alabama,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972] (1957). There has not been, however, this same tradition of Federal resolution of intra-union disputes and no Federal common law has developed in this area. Indeed, Congress in LMRD has provided statutory guidelines as to areas of intra-union affairs which the Federal courts would concern themselves with. In *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, et al. v. Lockridge,* 403 U.S. 274 [91 S.Ct. 1909, 29 L.Ed.2d 473] (1971), the Supreme Court, in discussing Section 301(a) jurisdiction limited the applicability of *Smith v. Evening News Association* to contracts between unions and employers in stating:
>
> ... the principal of *Smith v. Evening News* is applicable only to those disputes

that are covered by the terms of the collective bargaining agreement itself.

403 U.S. at 300–301 [91 S.Ct. at 1925]. 542 F.2d at 967. *See Journeymen,* 452 U.S. at 633–36, 101 S.Ct. at 2557 (Stevens, J., dissenting) (Section 301 was intended to create a body of substantive federal law to govern enforcement of collective bargaining agreements; there was no such intention to create substantive federal law to govern disputes over union constitution).

■ The *Trail* Court's position is a sensible one which recognizes the legislative intent behind LMRA section 301 and the logic of the Supreme Court's ruling in *Lockridge,* supra. Therefore, this Court declines to adopt the position of those courts which allow a section 301 action by an individual union member based on the union's alleged breach of the union constitution. As the above-quoted language points out, Congress enacted the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411 *et seq.,* 12 years after the enactment of the LMRA. The LMRDA, discussed in Part II of this Memorandum, was specifically intended to protect union members in their relationship to their union. *See N.L.R.B. v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 181, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967) (Bill of Rights of labor organization members was included in LMRDA to assure democratic conduct of union affairs). However, neither the LMRDA nor the LMRA was intended to provide a body of federal law to govern a claim of wrongful discharge from union employment, which is essentially what the plaintiff in this case is asserting.

## II. LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT CLAIM

■ Plaintiff also claims that in their treatment of her, defendants violated sections 101, 102, and 609 of the LMRDA, 29 U.S.C. §§ 411, 412, 529. Section 609 of the LMRDA prohibits a labor organization or its representative from fining, suspending, expelling, or "otherwise disciplin[ing] any of its members for exercising any right" protected by the LMRDA. Although she has been permitted to make two amendments to her complaint, plaintiff has failed to allege that defendants' conduct toward her was undertaken in retaliation for her exercise of the LMRDA-protected rights of union members. The only allegations which appear to be in support of plaintiff's LMRDA claim are that "[d]efendants' termination of plaintiff's employment was intended by defendants as punishment for crimes and acts that defendant knew plaintiff had not committed. . . . [and] was based on plaintiff's association with Archual and intended to punish her for that association." Complaint, ¶¶ 29, 30. These allegations do not state that plaintiff was ·punished in retaliation for exercising her LMRDA rights as a member of BRAC.

Moreover, plaintiff has not alleged any activity by defendants which constitutes "discipline" within the meaning of section 609. In *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Supreme Court explained that the *discharge* of a union *employee* does not constitute *discipline* of a union *member* within the meaning of section 609 of the LMRA, 29 U.S.C. § 529:

Petitioners contend that discharge from a position as a union employee constitutes "discipline" within the meaning of § 609; and that termination of union employment is therefore unlawful when predicated upon an employee's exercise of rights guaranteed to members under the Act. However, we conclude that the term "discipline," as used in § 609, refers only to retaliatory actions that affect a union member's rights or status as a *member* of the union. Section 609 speaks in terms of disciplining "members";· and the three disciplinary sanctions specifically enumerated—fine, suspension, and expulsion—are all punitive actions taken against union members as members. In contrast, discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees. *See Sheridan v. Carpenters*

*Local No. 626*, 306 F.2d 152, 156 (CA3 1962). We discern nothing in § 609, or its legislative history, to support petitioners' claim that Congress intended to establish a system of job security or tenure for appointed union employees.

456 U.S. at 437–38, 102 S.Ct. at 1871. In *Finnegan*, the Supreme Court held that the plaintiffs, who held a dual status as appointed union employees and union members, could not challenge their removal from union employment under LMRDA section 609. 456 U.S. at 439, 102 S.Ct. at 1872. Plaintiff's allegation of a violation of section 609 must fail for the same reason.

Plaintiff has also alleged that defendants violated LMRDA sections 101 and 102, 29 U.S.C. §§ 411 & 412. Section 102 provides a federal cause of action for members of labor organizations to redress the infringement of their rights under section 101. Section 101 enumerates a "Bill of Rights of Members of Labor Organizations," which provides in pertinent part:

(a)(1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings....

(2) Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(3) Dues, initiations fees, and assessments.—...

(4) Protection of the right to sue.—...

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411.

Plaintiff contends that defendants improperly disciplined her as a union member without notice and a hearing in violation of section 101(a)(5). However, the *Finnegan* Court's holding that discharge from employment is not "discipline" seems equally applicable to preclude plaintiff's claim under section 101(a)(5). *See* 456 U.S. at 438, 102 S.Ct. at 1871. The *Finnegan* Court stated that section 101(a)(5)'s procedural protections for discipline of union members were specifically intended not to protect a union employee or officer:

The Conference Report accompanying S. 1555 as finally enacted, H.R.Rep. 1147, 86th Cong., 1st Sess. 31 (1959) I Leg. Hist. 935, explains that this "prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; *it does not refer to suspension of a member's status as an officer of the union.*"

*Id.* (emphasis supplied by *Finnegan* Court). Plaintiff has made no allegation that she was "fined, suspended, expelled" from union membership or "otherwise disciplined" in her *status as a union member.* Indeed, plaintiff continued to be a member of BRAC at the time she filed this lawsuit. Complaint, ¶ 6. Thus, plaintiff has not stated a violation of section 101(a)(5).

Plaintiff's counsel argues that defendants' conduct in discharging plaintiff and restricting her access to the location of the

union offices infringed plaintiff's rights to freely speak and assemble with her fellow union members, rights protected under LMRDA section 101(a)(1) & (2), 29 U.S.C. § 411(a)(1) & (2). However, even after twice amending her complaint, plaintiff has failed to allege any facts to support a claim that her protected associational rights as a member of BRAC were infringed. Plaintiff alleged that "[o]n and after September 7, 1983, defendants would not permit plaintiff to enter the building at 1522 Locust Street without their permission. As a result, plaintiff was compelled to seek and obtain defendants' permission to visit her dentist whose offices are at 1522 Locust Street." ¶ 15. Plaintiff never alleges that this denial of access caused her to be frustrated in an attempt to exercise her associational rights as a member of BRAC. In *Cornelio v. Metropolitan District Council of Philadelphia* and *Vicinity of United Brotherhood of Carpenters and Joiners*, 358 F.2d 728, 729 (3d Cir.1966), the Third Circuit affirmed the district courts dismissal of a complaint which failed to specifically allege a violation of sections 101 and 102 of the LMRDA, stating, "The only rights and privileges redressable under [section 102 of the LMRDA] are those specified in § 1 of the Act. . . . The obvious deficiency in the complaint is its failure to allege the infringement of any such right or privilege." *Id. See Cornelio*, 243 F.Supp. 126 (E.D.Pa.1965).

Sections 101(a)(1) and (2) of the "Bill of Rights of Members of Labor Organizations" were intended to protect members' ability to exercise their full electoral and political rights, in order to assure democratic conduct of union affairs. *N.L.R.B. v. Allis Chalmers, supra*, 338 U.S. at 181, 87 S.Ct. at 2007; *Hodge v. Drivers, Salesmen, Warehousemen*, 707 F.2d 961, 963 (7th Cir.1983). The "overriding objective" of the LMRDA "was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873 (further citation omitted). Plaintiff's complaint raises none of the concerns which the LMRDA was designed to address. The gravamen of plaintiff's complaint is that she was terminated without just cause in violation of an express or implied contract, and that defendants acted tortiously in effectuating her discharge.

It is well established that "the assertion of a substantial claim under a federal statute gives a United States court jurisdiction of that claim even though that court may determine ultimately that no cause of action on which relief could have been granted was alleged." *Hughes v. Local No. 11 of International Association of Bridge, Structural and Ornamental Ironworkers*, 287 F.2d 810, 814 (3d Cir.1961) (citations omitted), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961). At the time of removal by the defendants and plaintiff's request to withdraw her motion to remand, this Court did not question the parties' allegations of a basis for federal jurisdiction under section 301 of the LMRA and sections 101, 102, & 609 of the LMRDA. However, the Court has now determined that these federal claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief can be granted. Because there are no longer any claims under federal law, and no basis for diversity jurisdiction has been alleged, this Court will decline to assert pendent jurisdiction over the remaining law claims. The Court has determined that in the interests of "judicial economy, convenience, and fairness to litigants", the remaining state law claims should be remanded to the Court of Common Pleas of Philadelphia County, where this case was originally filed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966).